### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | |
|---|---|
| **DOE CHILD, a minor, by his parents and next friends, JOHN AND JANE DOE,** | |
| **Plaintiffs,** | |
| **v.** | **Case No. 19-1215-MMM** |
| **STARK COUNTY COMMUNITY UNIT SCHOOL DISTRICT #100, et al.,** | |
| **Defendants.** | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Presently before the Court are Defendants' Motions to Dismiss (D. 19, 21, 23) and Plaintiff's Motion to Strike (D. 26).  For the reasons stated herein, Defendants' Motions are GRANTED IN PART AND DENIED IN PART, and Plaintiff's Motion is DENIED.

## JURISDICTION

The Court exercises jurisdiction over this matter under 28 U.S.C. §§ 1331 and 1343, as Plaintiff alleges violations of federal statutes and depravations of his civil rights.  Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this judicial district.  The Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367(a).

## BACKGROUND

Plaintiff Doe Child[1]  is a resident of Toulon, Illinois, and attended school within the Stark County Community Unit School District during the 2018-2019 academic year.  Plaintiff was

---

[1] Under Illinois law, a parent may sue on behalf of his or her minor child as next friend if the parent is represented by counsel and has no interests that conflict with those of the child. *In re Chi., Rock Island, & Pac. R.R. Co.*,

transported to and from school via school bus and has a developmental delay for which extra care and assistance is needed.  Plaintiff alleges he was abused by his bus aide on multiple occasions between October 2018 and May 2019, as she placed a five-gallon bucket over the upper half of his body, physically restrained him in an inappropriate and harmful manner, bullied, and verbally harassed him.  Plaintiff also alleges his bus driver witnessed the abuse, failed to protect him, and later admitted responsibility for the harm he suffered.  Additionally, Plaintiff contends he was suspended from riding the bus when he used force to resist the aide's attacks.  As a result of the aide's actions, Plaintiff states he sustained physical injuries and emotional distress.  Upon learning of the abuse, Plaintiff's parents brought the suit at hand seeking monetary damages for the injuries their son sustained.

## PROCEDURAL HISTORY

On June 24, 2019, Plaintiff filed his complaint outlining five claims, via twelve counts, against Stark County Community Unit School District #100 ("the District"), his former school bus driver, Alan Curry ("Curry"), and his former bus aide, Cathy Webster ("Webster").  (D. 1.)  On September 25, 2019, Defendants filed separate motions to dismiss.  (D. 19, 21, 23.)  On October 9, 2019, Plaintiff filed a motion to strike Curry's motion to dismiss (D. 26); and on October 23, 2019, Plaintiff filed responses to Defendants' motions to dismiss.  (D. 29, 30, 31.) The same day, Curry filed a response to Plaintiff's motion to strike.  (D. 32.)  This Order follows.

## LEGAL STANDARD

A motion to dismiss challenges the sufficiency of the complaint, not its merits.  *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990).  In reviewing a Rule 12(b)(6) motion to dismiss, the court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences

---

788 F.2d 1280, 1282 (7th Cir. 1986). In such situations, the Court may refer to the minor child as the sole plaintiff. *See e.g., Doe v. St. Francis Sch. Dist.*, 694 F.3d 869, 870 (7th Cir. 2012).

from those facts in plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## DISCUSSION

Plaintiff asserts various federal and state law claims against the District and two of its employees arising from alleged ongoing abuse and harassment while being transported to school via school bus. (D. 1 at 5-17.) Specifically, Plaintiff claims the District is liable for violations of the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq.*, ("IDEA") (Count VII); Defendants are liable for violations of the Americans with Disabilities Act, 42 U.S.C. §§ 12201 to 12213 ("ADA") (Counts X-XII); and, the District and Webster are liable for violations of the Fourth Amendment (Counts VIII-IX). *Id.* at 11-17. Plaintiff also asserts state law claims for willful and wanton conduct (Counts I-III) and "common carrier" claims (Counts IV-VI) against Defendants. *Id.* at 5-12. Defendants move to dismiss the claims under Federal Rule of Civil Procedure 12(b)(6). (D. 19, 21, 23.) Since the Court's analyis of Plaintiff's federal claims may influence its decision of whether to retain jurisdiction over his state law claims, the Court begins its analysis with the federal claims.

### I. Violations of the IDEA

In support of his allegation the District violated the IDEA, Plaintiff states: (i) he qualifies as a child with a disability; (ii) he had an Individualized Education Program ("IEP"); (iii) the IEP mandated he have "special transportation" to and from school and an aide on the bus; (iv) the District, by and through its agents, violated the "spirit" of his IEP; and (v) the actions of the agents

resulted in physical injuries and emotional distress. (D. 1 at 11-12.) In response, the District argues Plaintiff failed to exhaust the administrative procedures under the Act prior to bringing his claim in federal court. (D. 20 at 2-4.) It also argues, even if Plaintiff did exhaust the procedures, he is not entitled to relief under the Act because the District did not deny him a free appropriate public education ("FAPE"). *Id.* at 4. Lastly, the District argues the IDEA does not provide for monetary damages as a form of relief, therefore, Plaintiff's claim must be dismissed. *Id.* at 4-5. The issue for the Court to decide is whether the gravamen of Plaintiff's complaint, which details physical and verbal abuse at the hands of a bus aide, seeks relief for the denial of a FAPE under the Act. Only if it does is exhaustion of administrative procedures under the Act required. The Court finds Plaintiff does not state a claim for a violation of the IDEA because the gravamen of his complaint does not seek relief for the denial of a FAPE. Therefore, his IDEA claim against the District fails.

### A.     The Gravamen of Plaintiff's Complaint

In *Fry v. Napoleon Community Schools*, 137 S. Ct. 743 (2017), the Supreme Court issued guidance, in the form of hypothetical questions, for lower courts to determine whether the crux of a plaintiff's complaint seeks relief for the denial of a FAPE. *Id.* at 756. The first hypothetical for the court to answer is whether the plaintiff could have brought the same claim if the alleged conduct had occurred at a public facility. *Id.* The second hypothetical instructs the court to inquire whether an adult at the school (e.g., an employee or visitor) could have pressed the same grievance. *Id.* If the answer is "yes" to both questions, a complaint does not allege the denial of a FAPE, and a plaintiff's federal claims can move forward without the plaintiff exhausting the administrative procedures under the Act. *Id.* If the answer is "no" to both questions, the Court advises the complaint most likely concerns the denial of a FAPE and the plaintiff must first exhaust the

administrative procedures under the Act before bringing his claim(s) in federal court. *Id.* The Court also recommended that lower courts consider the history of the proceedings and whether a plaintiff has previously invoked the IDEA's formal procedures to handle the dispute in analyzing the crux of his complaint. *Id.* at 757.

The *Fry* hypotheticals are instructive to the case at hand because if Plaintiff's complaint fails to allege the denial of a FAPE, he has failed to state a claim for which relief can be granted under the Act. *See J.S. v. Houston Cty. Bd. of Educ.*, 877 F.3d 979 (11th Cir. 2017) (using elements outlined in *Fry* to determine whether the plaintiff stated a claim under the IDEA). Such is the case here. Plaintiff could have brought an identical claim if he was abused by an aide in a public library. He could also press the same grievance if he were an adult with a developmental delay who was treated in a similar fashion while visiting the school. Moreover, the Court provided an example in *Fry* that supports the conclusion that Plaintiff's complaint seeks something other than the denial of a FAPE. It provides:

> [S]uppose that a teacher, acting out of animus or frustration, strikes a student with a disability, who then sues the school under a statute other than the IDEA. Here too, the suit could be said to relate, in both genesis and effect, to the child's education. But the school districts opine, we think correctly, that the substance of the plaintiff's claim is unlikely to involve the adequacy of special education—and thus is unlikely to require exhaustion. A telling indicator of that conclusion is that a child could file the same kind of suit against an official at another public facility for inflicting such physical abuse—as could an adult subject to similar treatment by a school official. To be sure, the particular circumstances of such a suit (school or theater? student or employee?) might be pertinent in assessing the reasonableness of the challenged conduct. But even if that is so, the plausibility of bringing other variants of the suit indicates that the gravamen of the plaintiff's complaint does not concern the appropriateness of an educational program.

*Id.* at 756 n.9 (internal citations omitted).

Since Plaintiff seeks relief for something other than the denial of a FAPE, his claim for relief under the Act itself fails. *See Shaw v. Dolton Riverdale Sch. Dist. 148*, No. 19 C 1241, 2019

WL 5695825 (N.D. Ill. Nov. 4, 2019) (dismissing plaintiffs' IDEA claim where plaintiffs provided only conclusory statements about how their child was denied a FAPE). Accordingly, the District's Motion to Dismiss Plaintiff's IDEA claim is GRANTED, and the claim is DISMISSED.

### B.     Exhaustion of Administrative Procedures

The District's argument on exhaustion of the IDEA's administrative procedures applies to the federal claims Plaintiff brings against it. In *Fry*, the Court resolved the issue of whether a plaintiff needed to exhaust the administrative procedures under the Act before bringing suit under a statute other than the IDEA. 137 S. Ct. at 748. The Court held a plaintiff is not required to exhaust the administrative procedures under the Act if the gravamen of his complaint does not seek relief for the denial of a FAPE. *Id.* at 752. Because the gravamen of Plaintiff's complaint does not seek relief for the denial of a FAPE, Plaintiff is not required to exhaust the administrative procedures under the Act before bringing his federal claims. He also need not demonstrate that his IDEA claim falls under one of the exceptions to the exhaustion requirement, which Plaintiff attempts to do in his response to the District's motion to dismiss. (D. 31 at 2-3.) Accordingly, Plaintiff was not required to exhaust the administrative procedures under the IDEA before bringing his claims under § 1983 or Title II of the ADA.

### II.     Violations of the ADA

To support his contention that his rights under the ADA were violated, Plaintiff states: (i) he qualifies as a child with a disability; (ii) Defendants had a duty not to discriminate against him; (iii) Defendants discriminated against him; and (iv) as a result, he suffered injuries. (D. 1 at 14-17.) In response, Curry and Webster argue they cannot be held liable under Title II of the ADA, as the statute makes clear that violations of the Act may only be brought against public entities and not individuals. (D. 22 at 10; D. 24 at 11.) Additionally, Curry argues Plaintiff has not alleged

6

sufficient facts to state a plausible cause of action. (D. 24 at 12-13.) The issue before the Court is whether Plaintiff has pleaded sufficient factual content for a claim under Title II of the ADA against Defendants. The Court finds Plaintiff has sufficiently stated a valid ADA claim only against the District.[2] Therefore, his claims against Curry and Webster are DISMISSED.

The ADA seeks to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities[.]" § 12101(b)(1) (2009). "Title II of the ADA requires that 'no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services . . . of a public entity, or be subjected to discrimination by any such entity.' " *Foley v. City of Lafayette, Ind.*, 359 F.3d 925, 928 (7th Cir. 2004) (internal citation omitted).

To state a claim for a violation of Title II of the ADA, a plaintiff must allege: "(1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities or was otherwise discriminated against; and (3) that such exclusion, denial of benefit or discrimination was by reason of his disability." *Novak v. Bd. of Trs. of S. Ill. Univ.*, No. 12-cv-7, 2012 WL 5077649, at *1 (S.D. Ill. Oct. 18, 2012) (quoting *Toledo v. Sanchez*, 454 F.3d 24, 31 (1st Cir. 2006)). "Under Title II of the ADA, which forbids discrimination by 'any public entity', 42 U.S.C. § 12131, the proper defendant is that 'entity.' " *Walker v. Snyder*, 213 F.3d 344, 346 (7th Cir. 2000), *abrogated on other grounds by Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356 (2001). Title II does not provide for individual capacity suits against state officials. *Garcia v. S.U.N.Y. Health Scis. Ctr.*, 280 F.3d 98, 107 (2d Cir. 2001) (citing *Walker*, 213 F.3d at 346)). Additionally, "[o]fficial-capacity suits . . . generally represent only another way of pleading an action against an entity on

---

[2] The District failed to object to this particular claim in its brief. (*See generally*, D. 20.)

which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is . . . to be treated as a suit against the entity." *Id.* at 166; *but cf. Henrietta D. v. Bloomberg*, 331 F.3d 261, 287 (2d Cir. 2003) ("The Eleventh Amendment . . . does not preclude suits against state officials in their official capacity for [injunctive] relief to prevent a continuing violation of federal law.").

Plaintiff has pleaded sufficient factual content to allow the Court to draw the reasonable inference that the District is liable for violations of Title II of the ADA. The plausibility standard requires "enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). Plaintiff has met this standard: He claims that because of his disability, District agents acting in their official capacities, abused, harassed, or otherwise singled him out. However, because there is no individual-capacity liability under Title II of the ADA for monetary damages,[3] and due to the fact that Plaintiff's official capacity claims against Curry and Webster translate to a claim against the District itself, Plaintiff's ADA claims against them are DISMISSED while his claim against the District STANDS.

### III. Violations of the Fourth Amendment

To support his contention the District and Webster violated his Fourth Amendment rights, Plaintiff states: (i) Webster was an agent, employee, and/or servant of the District; (ii) the District is a political subdivision of the State of Illinois; (iii) as a political subdivision of the State of Illinois, and as an employee and/or agent of the District, Defendants owed Plaintiff the right to be free from excessive use of force; (iv) notwithstanding this duty, Defendants violated his constitutional rights; and (v) as a direct and proximate result of Defendants' acts, he sustained

---

[3] *See Doe v. Bd. of Trs. of Univ. of Ill.*, 429 F. Supp. 2d 930, 940 (N.D. Ill. 2006) ("To the extent Doe is suing the individual defendants in their individual capacities, his claim is barred because the ADA only allows institutions, not individuals, to be sued for monetary damages.").

injuries and suffered emotional distress. (D. 1 at 12-14.) In response, Webster and the District argue no legal authority exists that would put Webster on notice that her acts violated the Fourth Amendment and she is entitled to qualified immunity (D. 22 at 7-9); the District cannot be held liable under 42 U.S.C. § 1983 on a theory of *respondeat superior* (D. 20 at 5), and Plaintiff has failed to allege the District had a custom or policy that was the "moving force" behind the constitutional violation (*id.* at 6).

The issues for the Court to determine are whether Plaintiff pleaded sufficient factual content to state a claim for a violation of his Fourth Amendment rights; whether Webster was on notice that her behavior violated Plaintiff's right to be free from unreasonable searches and seizures; and whether Plaintiff has pleaded sufficient factual content to state a Fourth Amendment claim against the District under a *Monell* theory of liability. The Court finds Plaintiff pleaded sufficient factual content to state a Fourth Amendment claim against Webster; Webster's actions (if true) were so egregious that no reasonable official could have thought that behaving in such a manner was in accordance with the law; and Plaintiff failed to plead sufficient factual content to state a Fourth Amendment claim against the District under a *Monell* theory of liability. Accordingly, Plaintiff's Fourth Amendment claim against Webster STANDS, and his Fourth Amendment claim against the District is DISMISSED.

## A.    Fourth Amendment Claim against Webster

The Civil Rights Act of 1871, as amended, 42 U.S.C. § 1983, provides access to a federal forum for claims of unconstitutional treatment at the hands of state officials. *Heck v. Humphrey*, 512 U.S. 477, 480 (1994). To state a claim under § 1983 against a state official, a plaintiff must allege the defendant: (1) deprived him of a federal constitutional right; and (2) acted under color of state law. *Savory v. Lyons*, 469 F.3d 667, 670 (7th Cir. 2006). For the purposes of the instant

motion, Webster does not dispute she was acting under color of state law while serving as an aide on Plaintiff's school bus. Therefore, the Court must only decide if Plaintiff pleaded sufficient factual content to conclude she deprived him of his Fourth Amendment rights.

The Fourth Amendment guarantees citizens the right "to be secure in their persons . . . against unreasonable . . . seizures." *Graham v. Connor*, 490 U.S. 386, 394-95 (1989). "Although the Fourth Amendment typically applies in the law enforcement context, it also extends to searches and seizures of students at public schools." *Jaythan v. Bd. of Educ. of Sykuta Elementary Sch.*, 219 F. Supp. 3d 840, 844 (citing *New Jersey v. T.L.O.*, 469 U.S. 325, 341-42 (1985); *Wallace by Wallace v. Batavia Sch. Dist.* 101, 68 F.3d 1010, 1012 (7th Cir. 1995)). To determine whether a seizure comports with the Fourth Amendment's notion of reasonableness requires close scrutiny of the factual circumstances under which the seizure allegedly took place. *Hilton v. Lincoln-Way High Sch.*, No. 97 C 3872, 1998 WL 26174, at *6 (N.D. Ill. Jan. 14, 1998) (citing *Bridgman v. New Trier High Sch. Dist. No. 203*, 128 F.3d 1146 (7th Cir. 1997). The issue for the Court to decide is whether Plaintiff's allegations are sufficient to indicate that he was seized by Webster, and whether, under the circumstances presented, that seizure was objectively unreasonable. *See Wallace*, 68 F.3d at 1014 ("[I]n the context of a public school, a teacher or administrator who seizes a student does so in violation of the Fourth Amendment only when the restriction of liberty is unreasonable under the circumstances then existing and apparent.").

At this stage of the litigation, Plaintiff's allegations are sufficient to indicate he was seized by Webster and that his seizure was objectively unreasonable. Plaintiff claims Webster placed a five-gallon bucket over the upper half of his body, raising the reasonable inference Plaintiff could not escape. (D. 1 at 14.) He also alleges she physically restrained him in a manner which left bruises, held him down so he could not resist, and wrestled him with the intent of causing physical

pain.  *Id.*  Accepting as true these well-pleaded allegations and drawing all reasonable inferences from those allegations in his favor, the Court finds Plaintiff has stated a Fourth Amendment claim against Webster.

Webster does not challenge the fact that Plaintiff states a Fourth Amendment claim against her, as she concedes "[s]ome of [Plaintiff's] allegations seem to suggest that there has been some restraint of [his] movement."  (D. 22 at 8.)  Rather, she argues that as a public official she is shielded from liability by the doctrine of qualified immunity.  *Id.* at 8-9.  The Court disagrees.

### B.    Webster Not Entitled to Qualified Immunity

"Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  "A state official is protected by qualified immunity unless the plaintiff shows: (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct."  *Reed v. Palmer*, 906 F.3d 540, 546 (7th Cir. 2018) (internal quotation marks and citations omitted).  "If *either* inquiry is answered in the negative, the defendant official is protected by qualified immunity."  *Id.*

The Seventh Circuit addressed the issue of qualified immunity at the early stages of litigation in *Reed v. Palmer*, 906 F.3d 540, 547-48 (7th Cir. 2018).  It observed:

> Under the clearly established prong, the burden is on plaintiffs to demonstrate the alleged violation of their . . . right was clearly established. To be clearly established at the time of the challenged conduct, the right's contours must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right. . . . [I]n some rare cases, where the constitutional violation is patently obvious, the plaintiffs may not be required to present the court with any analogous cases. Instead, plaintiffs can demonstrate clearly established law by proving the defendant's conduct was so egregious and unreasonable that . . . no reasonable [official] could have thought he was acting lawfully.

*Id.* (internal quotation marks and citations omitted).

The Court finds Plaintiff is not required to present analogous caselaw demonstrating the violation of his constitutional rights was clearly established at the time of the challenged conduct. The behavior outlined in his complaint is so egregious that no reasonable official could have thought that behaving in such a manner was in accordance with the law. "A school official searching a student is 'entitled to qualified immunity where clearly established law does not show that the search violated the Fourth Amendment.' To be established clearly, however, there is no need that 'the very action in question [have] previously been held unlawful.' The unconstitutionality of outrageous conduct obviously will be unconstitutional." *Safford Unified Sch. Dist. No. 1 v. Redding*, 557 U.S. 364, 377 (2009) (internal citations omitted). Accepting Plaintiff's allegations as true, the Court finds Webster's actions were outrageous, and as such, the Fourth Amendment claim against her STANDS.

### C.     Fourth Amendment Claim against the District

In *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), the Supreme Court held that "the legislative authority of the Civil Rights Act of 1871 compels the conclusion that Congress . . . intend[ed] municipalities and other local government units to be included among those persons to whom § 1983 applies." *Id.* at 690. To state a claim against a school district via § 1983 under a *Monell* theory of liability, a plaintiff must allege: (i) the district had an express policy that, when enforced, caused a constitutional deprivation; (ii) the district had a widespread practice that, although not authorized by written law or express policy, is so permanent and well-settled as to constitute a custom or usage with the force of law; or (iii) his constitutional injury was caused by a person with final policymaking authority. *McCormick v. City of Chi.*, 230 F.3d 319, 324 (7th Cir. 2000); *Jaythan*, 219 F. Supp. 3d at 845.

It is clear from Plaintiff's complaint that he fails to allege the District had an express policy that mandated the constitutional violations against him. It is also clear from the complaint that he fails to allege either Curry or Webster were persons with final policymaking authority. In Plaintiff's response to the District's motion to dismiss, he argues, absent supporting caselaw, that based on the allegations in his complaint, and because the violations against him occurred on more than one occasion, this Court should "infer that [there] was [at] least a policy/widespread practice on the part of the other Defendants to this matter and therefore could be inferred to have been a policy/widespread practice on the part of [the District]." (D. 31 at 4.) The Court disagrees.

In *Gray v. Dane County*, 854 F.2d 179, 182 (7th Cir. 1988), the Seventh Circuit instructed:

> Despite their liberality on pleading matters . . . the federal rules still require that a complaint allege facts that, if proven, would provide an adequate basis for each claim. In ruling on motions to dismiss, courts must presume that all facts fairly alleged in the complaint are true. The courts are not obliged, however, to ignore any facts set forth in the complaint that undermine the plaintiff's claim or to assign any weight to unsupported conclusions of law.

*Id.* (internal citations omitted).

In the context of municipal liability, Plaintiff fails to allege facts that, if proven, would provide an adequate basis for a Fourth Amendment claim against the District. To the contrary, the plain language of the complaint implicates the "agents, employees and/or servants" of the District for Plaintiff's constitutional violations. (D. 1, ¶ 60 at 13.) The Court cannot infer a claim against the District in light of the contrary language used in Plaintiff's complaint, and the Seventh Circuit has reiterated there is no municipal liability under § 1983 on a theory of *respondeat superior*. *Hansen v. Bd. of Trs. of Hamilton Se. Sch. Corp.*, 551 F.3d 599, 616 (7th Cir. 2008). The Seventh Circuit also concluded that "the isolated, intentional acts of an officer [without authority to set municipal policy] do not establish municipal liability under Section 1983, and [we have] repeatedly affirmed dismissals of section 1983 claims that seek to impose municipal liability based

on such isolated acts." *Gray*, 854 F.2d at 183. Here, the isolated incidents outlined in Plaintiff's complaint fail to establish a pattern of unconstitutional conduct of which the District should have been aware.

Accordingly, Plaintiff's Fourth Amendment claim against the District is DISMISSED. *Kyle v. Morton High Sch.*, 144 F.3d 448, 455 (7th Cir. 1998) ("The plaintiff cannot state a claim by attaching a bare conclusion to the facts he narrates."); *McTigue v. City of Chi.*, 60 F.3d 381, 382 (7th Cir. 1995) (dismissing plaintiff's claim when he failed to sufficiently plead a cause of action under a *Monell* theory of liability).

### IV.     Willful and Wanton Conduct

To support his claim of willful and wanton conduct under Illinois law, Plaintiff alleges: (1) Defendants owed to him a duty of care to refrain from willful and wanton acts and omissions; (2) Defendants breached their duty by abusing and harassing him, or failing to stop the abuse; and (3) as a direct result of their breach; (4) he suffered injuries and emotional distress. (D. 1 at 5-8.) In response, Curry and Webster argue Plaintiff's claim should be dismissed because there is no independent cause of action for willful and wanton conduct under state law (D. 22 at 6; D. 24 at 3); Plaintiff fails to sufficiently allege the duty to which he was owed (D. 24 at 4-5); and the Seventh Circuit has reiterated, that in Illinois, there is no duty to prevent harm by a third-party. *Id.* The issue for the Court to decide is whether Plaintiff has pleaded sufficient factual content to allege: (i) Defendants owed him a duty; (ii) Defendants breached that duty; (iii) the breach was a proximate cause of his injuries; and (iv) Defendants deliberately intended to harm him or consciously disregarded his welfare. The Court finds Plaintiff has stated an aggravated negligence

claim via allegations of willful and wanton conduct against Defendants, and Curry's and Webster's motions to dismiss this claim are DENIED.[4]

The Illinois Supreme Court addressed the issue of an independent state law claim of willful and wanton conduct in *Jane Doe-3 v. McLean County Unit District No. 5 Board of Directors*, 973 N.E.2d 880, 887 (Ill. 2012). It concluded:

> There is no separate, independent tort of willful and wanton conduct. Rather, willful and wanton conduct is regarded as an aggravated form of negligence. In order to recover damages based on willful and wanton conduct, a plaintiff must plead and prove the basic elements of a negligence claim—that the defendant owed a duty to the plaintiff, that the defendant breached that duty, and that the breach was a proximate cause of the plaintiff's injury. In addition, a plaintiff must allege either a deliberate intention to harm or a conscious disregard for the plaintiff's welfare.

*Id.* (internal quotation marks and citations omitted). The existence of a duty is a question of law to be determined by the court. *Fancil v. Q.S.E. Foods, Inc.*, 328 N.E.2d 538, 540 (Ill. 1975). Factual disputes concerning a breach of that duty and the proximate cause of the injury are questions for the trier of fact. *Johnson v. Hoover Water Well Serv., Inc.*, 439 N.E.2d 1284, 1290 (Ill. App. Ct. 1982).

### A.    Duty of Care

Before the Court analyzes whether Plaintiff has sufficiently alleged a deliberate intention to harm or a conscious disregard for his welfare, it must first identify whether Defendants owed Plaintiff a duty of care. The existence of a duty is a question of law shaped by public policy considerations. *LaFever v. Kemlite Co.*, 706 N.E.2d 441, 446 (Ill. 1998). "The touchstone of the duty analysis is to ask whether the plaintiff and defendant stood in such a relationship to one another that the law imposes on the defendant an obligation of reasonable conduct for the benefit of the plaintiff." *Krywin v. Chi. Transit Auth.*, 938 N.E.2d 440, 447 (Ill. 2010).

---

[4] The District failed to object to this claim in its motion to dismiss. (*See generally*, D. 20.)

In *Simpkins v. CSX Transportation, Inc.*, 965 N.E.2d 1092, 1098 (Ill. 2012), the Illinois

Supreme Court expounded on the duty analysis.  It reiterated:

> Even when one has not created the risk of harm, a duty to take affirmative action to aid another may arise where a legally recognized "special relationship" exists between the parties. Such duties are, indeed, premised upon a relationship between the parties that is independent of the specific situation which gave rise to the harm. We have recognized four relationships that give rise to an affirmative duty to aid or protect another against an unreasonable risk of physical harm: common carrier and passenger, innkeeper and guest, custodian and ward, and possessor of land who holds it open to the public and member of the public who enters in response to the possessor's invitation. We have also recognized a duty to a third party to control the individual who is the source of the harm when a defendant has a special relationship with that person, such as a parent-child relationship and a master-servant or employer-employee relationship.

*Id.* (internal quotation marks and citations omitted).

In addition, before *Simpkins* was decided, the Illinois Supreme Court issued its decision in

*Henrich v. Libertyville High School*, 712 N.E.2d 298 (Ill. 1998).  In *Henrich*, the court ruled:

> Section 24–24 of the School Code confers on teachers *in loco parentis* status in all matters relating to the supervision of students in school activities. This court has interpreted section 24–24 to immunize ordinary negligence, but not to immunize willful and wanton misconduct. This interpretation is keyed to the rule that parents are not liable to their children for ordinary negligence, but are liable for willful and wanton misconduct. . . . We note that this court has narrowed parental immunity to cover only ordinary negligence arising from conduct that is inherent to the parent-child relationship; *i.e.,* conduct that concerns parental discretion in discipline, supervision, and care of the child. Absent such conduct, a child may recover from a parent for negligence. As a result of *Cates,* the educator immunity provided by section 24–24 of the School Code is accordingly narrowed.

*Id.* at 302–03, *as modified on denial of reh'g* (June 1, 1999) (internal citations omitted).

In *Doe v. Sanchez*, 52 N.E.3d 618, 620 (Ill. App. Ct. 2016), the mother of a minor student

filed suit against a bus driver, and the service through which he was employed, alleging the bus

driver sexually assaulted her daughter while riding the bus to school.  In *Sanchez*, the Illinois

Appellate Court held the entity providing student transportation services owed the students it

transported the highest duty of care.  *Id.* at 624.  It also held the entity could be vicariously liable

for the actions of its employee committed outside the scope of employment via a common carrier's

nondelegable duty. *Id.* at 628. Importantly, the court also noted:

> [W]e stress the importance Illinois rightly places on the safety of school children. Illinois has a public policy favoring the safe transportation of students that is supported by the courts, the legislature, and our constitution. Moreover, the high duty of care a common carrier owes its passengers is premised on the carrier's unique control over its passengers' safety. Likewise, a school bus driver is in unique control over the safety of students because he or she is often the only adult present during the commute. . . [S]chool children are no less vulnerable on a bus operated by a private contractor than on one operated by a school district. . . . Rather, public policy compels that we impose the highest standard of care on a transporter of students, regardless of whether that transporter is a private contractor or a public entity. Illinois authority is clear that our focus is on the safety of the school children, not on the status of the bus driver.

*Id.* at 627 (internal citations omitted).

In *Brooks v. McLean County Unit District No. 5*, 8 N.E.3d 1203, 1210 (Ill. App. Ct. 2014),

the Illinois Appellate Court found a school district had a duty to supervise students left in its care.

In *Brooks*, a student at Kingsley Junior High School in Normal, Illinois, was in a boys' bathroom

at the school with other students playing a game called "Body Shots." *Id.* at 1206. The game

involved students voluntarily punching each other as hard as they could in the abdomen, chest, and

ribs. *Id.* After participating in the game, the student exited the bathroom, collapsed in the hallway,

and later died. *Id.* The special administrator of the student's estate filed a complaint alleging,

*inter alia*, the boy's death was the result of willful and wanton conduct of the district. *Id.* The

court concluded the district had a duty to supervise as part of its overall duty to maintain discipline

under Section 24-24 of the Illinois School Code. *Id.* In light of the aforementioned caselaw on

the topic, the Court finds Plaintiff has pleaded sufficient factual content to allege Defendants owed

him a duty of care.

## B.    Duty, Breach, Causation *Plus*

The factual determination of whether Defendants actually breached their duty, and whether that breach was the proximate cause of Plaintiff's injuries cannot be decided at this stage of the litigation.  Plaintiff has, however, pleaded sufficient factual content to allege Defendants owed him a duty, they breached that duty, and, as a result, he was injured.  He also pleads sufficient factual content to allege Defendants demonstrated a deliberate intention to harm or that they consciously disregarded his welfare.  Plaintiff states Webster abused and harassed him while she was on duty as a bus aide.  He alleges Curry witnessed the abuse and failed to intervene.  Lastly, Plaintiff contends because of Webster's abuse, and Curry's deliberate indifference to it, he was seriously injured.  Accordingly, his claim of aggravated negligence via willful and wanton conduct against Defendants STANDS, and Curry's and Webster's motions to dismiss this claim are DENIED.

## V.    Common Carrier Claim

The final claim is Plaintiff's common carrier claim against Defendants.  To support his claim, Plaintiff states: (i) Defendants were common carriers; (ii) as common carriers, Defendants owed him the highest duty of care for his safety; (iii) District agents, employees, and/or servants violated their duty of care; and (iv) as a result of their actions, he was injured.  (D. 1 at 8-11.)  In response, Curry and Webster argue they are not common carriers subject to suit under Illinois law.  (D. 24 at 9-10; D. 22 at 6.)  The issue for the Court to decide is whether an independent state law claim of "common carrier" exists; and if so, whether Defendants constitute common carriers under Illinois law.  The Court finds there is no independent state law claim of "common carrier" in Illinois.  Rather, a designation of "common" or "private" carrier is relevant to the requisite duty owed to transportees of said carriers.  Accordingly, Defendants' motions to dismiss Plaintiff's

common carrier claims are GRANTED, as Plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

In *Doe v. Rockdale School District*, *No. 84*, 679 N.E.2d 771 (Ill. App. Ct. 1997), the issue of common carrier liability was analyzed in detail. In *Rockdale*, a mother filed a complaint on behalf of her son for *negligence* and *willful and wanton conduct* against a bus service and local school district because her son was allegedly sexually assaulted by another student while being transported to school on a school bus. *Id.* at 772. The plaintiff alleged the bus service was a common carrier and that when the school district contracted with the service, the district became its principal. *Id.* at 773. The district argued that neither it nor its alleged agent was operating as a common carrier while transporting the boy to and from school. *Id.* The court concluded the service and the district were acting as private carriers as opposed to common carriers and that the common carrier exception to the Tort Immunity Act did not apply. *Id.* at 774. In determining the service and district were acting as private carriers, the court observed:

> Longstanding authority in Illinois has held that a common carrier is one who undertakes for the public to transport from place to place such persons or goods of such as choose to employ him for hire. A common carrier undertakes for hire to carry all persons indifferently, who may apply for passage so long as there is room and there is no legal excuse for refusal. Moreover, a common carrier may be liable for an unexcused refusal to carry all who apply. The definitive test to be employed to determine if a carrier is a common carrier is whether the carrier serves all of the public alike. . . . A private carrier by contrast undertakes by special agreement, in a particular instance only, to transport persons or property from one place to another either gratuitously or for hire. A private carrier makes no public profession to carry all who apply for carriage, transports only by special agreement, and is not bound to serve every person who may apply.

*Id.* at 794 (internal quotation marks and citations omitted).

Based on the limited information before it, the Court cannot find that the District or its agents acted as common carriers when transporting Plaintiff to and from school. As was the case in *Rockdale*, Plaintiff has failed to allege that either the District, or its busing service, advertised

to the general public, or that they transported indiscriminately all members of the general public who applied. Rather, Plaintiff alleges the District, via Curry, transported schoolchildren to and from school during the 2018-2019 school year. (D. 1, ¶¶ 11-12 at 3.) More importantly, there is no independent claim of "common carrier" in Illinois. The court's analysis in *Rockdale* was premised on claims of negligence, which Plaintiff has already raised. Accordingly, Plaintiff's common carrier claims are DISMISSED.

## VI. Motion to Strike

Plaintiff offers threadbare conclusions and unsupported arguments in his Motion to Strike Curry's Motion to Dismiss, which the Court declines to address in detail. The crux of Plaintiff's Motion states:

> Defendant's arguments throughout his Motion question the acts alleged, the omissions on the part of the Defendants, what the Defendants could have known, and even goes one step further, stating that the allegations in Plaintiff's Complaint and in the media are false. NONE of those arguments are appropriate for a 12(b)(6) Motion. Given that they are seemingly the underlying basis for and relied upon throughout, the Motion, Defendant's Motion to Dismiss should be STRICKEN.

(ECF No. 26.)

The Local Rules of this District mandate: "Every motion raising a question of law . . . must include a memorandum of law including a brief statement of the specific points or propositions of law and supporting authorities upon which the moving party relies, and identifying the Rule under which the motion is filed." CDIL-LR 7.1(B)(1). Plaintiff fails to include any supporting authority upon which his motion relies and omits the Federal Rule of Civil Procedure under which his motion is filed. As such, Plaintiff's Motion to Strike is DENIED. *See Beard v. Whitley Cnty. REMC*, 840 F.2d 405, 408-09 (7th Cir. 1988) ("It is not the obligation of [the] court to research and construct the legal arguments open to parties, especially when they are represented by counsel.").

**CONCLUSION**

For the reasons set forth herein, Defendants' [19, 21, 23] Motions to Dismiss are GRANTED IN PART AND DENIED IN PART. Defendants' Motions are GRANTED as to Counts IV, V, VI, VII, VIII, XI, and XII. Count VIII is DISMISSED WITHOUT PREJUDICE. Counts IV, V, VI, VII, and XII are DISMISSED WITH PREJUDICE. Plaintiff's [26] Motion to Strike is DENIED. Plaintiff's claims of aggravated negligence against the District, Curry, and Webster (Counts I-III); claim for violations of his Fourth Amendment rights against Webster (Count IX); and claim for violations of the ADA against the District (Count X) STAND and will proceed to discovery.

Entered on December 9, 2019.

/s/ Michael M. Mihm
Michael M. Mihm
United States District Judge